CITY OF MILWAUKEE, Plaintiff in error, vs. THE STATE EX REL. NEWS PUBLISHING COMPANY, Defendant in error.

*October 22 — November 16, 1897.*

*Milwaukee city charter: Publication of council proceedings: Municipal corporations.*

1. No other publication of the proceedings of the common council of the city of Milwaukee except that in newspapers was required by ch. 66, Laws of 1891, and the common council having, under the authority of ch. 98, Laws of 1897, voted to suspend or discontinue the publication of such proceedings in newspapers, there was no provision of the charter nor any statute requiring that proposals for the printing of those proceedings in pamphlet form should be confined to such newspapers as were qualified under those provisions of the charter, but the city might accept proposals from other parties. Such printing might fairly be regarded as "incidental printing," and be let in accordance with secs. 16, 17, ch. V, of the charter (Laws of 1874, ch. 184).

2. The mere facts that the city clerk did advertise for proposals for publishing the proceedings of the council in pamphlet form in accordance with those provisions of the charter, and that bids were presented by the relator and others, do not entitle the relator to a *mandamus* to compel action on such bids.

City of Milwaukee vs. The State ex rel. News Publishing Co.

ERROR to review a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge.  *Reversed.*

It appears from the record that June 11, 1897, the relator brought this *mandamus* to compel the city and its common council and its officers to consider and act upon the proposals for publishing the proceedings of the common council in pamphlet form, then pending before them and undetermined, and accept one of the proposals, and let a contract for doing the work thereon, or reject each and all of the proposals, and readvertise for proposals for doing the work, in the manner required by the charter, and let a contract thereon, for doing the work of publishing such proceedings in pamphlet form for and during the next ensuing year; that July 2, 1897, the city and its council and mayor made return to such writ, justifying their conduct under the provisions of the charter as amended and the resolutions of the common council; that July 6, 1897, the relator demurred to such return for insufficiency; that such demurrer was sustained by the court; and that the court ordered and adjudged that a peremptory writ of *mandamus* issue therein, directing and commanding the defendants as prayed in the petition for the writ.  To reverse that judgment, the city sues out this writ of error.

For the plaintiff in error there was a brief by *Howard Van Wyck*, city attorney, and *C. H. Hamilton*, of counsel, and oral argument by *Mr. Hamilton*.

*David S. Rose*, for the defendant in error, argued· in this and the succeeding case of *News Publishing Co. v. Milwaukee*, that, inasmuch as the resolution of the common coun-. cil suspended publication of council proceedings only in newspapers, but provided for publication in another form, the mode and manner of letting the contracts therefor must comply with the provisions of the city charter.  15 Am. & Eng. Ency. of Law, 1042, 1086; *Baltimore v. Keyser*, 72 Md. 106; *McBrian v. Grand Rapids*, 56 Mich. 95; *Durango v. Pennington*, 7 Am. & Eng. Corp. Cas. 588; *Lee v. Racine*,

64 Wis. 231; *Smith v. Newburgh,* 77 N. Y. 131; Sutherland, Statutory Construction, § 457; *Matter of Manhattan R. Co.* 102 N. Y. 301; 1 Beach, Pub. Corp. §§ 690, 691; *Gaddis v. Richland Co.* 92 Ill. 121; *Keeney v. Jersey City,* 11 Am. & Eng. Corp. Cas. 309; *Carr v. Dooley,* 122 Mass. 257; *Clark v. Davenport,* 14 Iowa, 494; *Logan v. Pyne,* 43 id. 524; *Bloom v. Xenia,* 32 Ohio St. 523; *Thomas v. Richmond,* 12 Wall. 349; *Coldwater v. Tucker,* 36 Mich. 475; *Alton v. Ætna F. Ins. Co.* 82 Ill. 46; *Leonard v. Canton,* 35 Miss. 189; *Trowbridge v. Newark,* 16 N. J. Law, 440. The contractor for "incidental printing" is not entitled to publish the council proceedings in pamphlet form. The power to let such a contract is not in the board of public works, but is expressly reserved by sec. 9, ch. 3, of the charter to the common council. *Bentley v. Chisago Co.* 25 Minn. 259; *Butler v. Charlestown,* 7 Gray, 12; *Stephens v. People ex rel. Rafter,* 89 Ill. 337; *Schuyler Co. v. People ex rel. R. I. & A. R. Co.* 25 id. 183.

CASSODAY, C. J. Prior to March 27, 1897, the city charter required the clerk of the city to advertise in one English, one German, and one Polish newspaper published therein for separate proposals or bids to do the advertising for the city for the next ensuing year thereafter (1) "of all ordinances, notices and all the city advertising required by law, or by resolution or ordinance of the common council to be published in a newspaper, [2] *and also* for proposals to publish the *proceedings of the common council as may be ordered* by the council. . . . No bids for either kind of work shall be considered by said clerk, except from a daily newspaper which has been published in said city at least two years consecutively next before the date of the bid, and no bid shall be considered, unless accompanied by a certificate from the city treasurer, showing that the bidder has deposited with him $500 in money or United States bonds, and a written

City of Milwaukee vs. The State ex rel. News Publishing Co.

agreement executed by said bidder under seal, to the effect that if such bid, either for advertising or publishing proceedings, be accepted; and upon being notified thereof, such bidder shall fail to enter into and execute a contract for the advertising or the publication of proceedings, or for both, as required by this act within the time prescribed by said clerk, said advertisement then and in such case the said $500 shall become absolutely forfeited to said city." Charter, subch. III, sec. 9 [Laws of 1891, ch. 66]. Such bids were therein required to be delivered to the clerk on or before the third Tuesday of April of the then current year, and to be opened by the clerk on that day, in the presence of the mayor, and entered of record, with the respective prices for which either of such newspapers should offer to do either the advertising or the publication of the proceedings of the common council. Thereupon the common council was required, at its next regular meeting, to designate and award, by resolution, such advertising and such publication of council proceedings to the English, the German, and the Polish newspaper so qualified to bid, and which have respectively offered to do such advertising and such publication of proceedings, *or either*, at the lowest price for the year then ensuing. And it was therein further provided, in effect, that whenever such successful bidder or bidders had executed the contract, as therein required, then that "such newspaper shall thereupon become liable to print and publish all such ordinances, notices, council proceedings and other proceedings as are required by the charter of the city of *Milwaukee* or by resolution or ordinance of the common council, to be published in a public newspaper, and which such newspaper shall have contracted to publish, for the compensation specified in such proposals and contract, and shall receive no other compensation therefor, provided, however, that said common council may, in its discretion, reject any or all bids so made, that by said common council shall be deemed exorbitant or

too high and in case of the rejection of all bids for either
advertising or publication of proceedings, for such cause it
shall thereupon be the duty of the said common council to
direct said city clerk to readvertise for proposals for such
advertising or publication of proceedings, as the case may
be, in the same manner as hereinbefore in this act provided."
Id. Thus, it appears that the only publication of the "pro-
ceedings of the common council" required to be published
was such publication in newspapers; and the proposals, bids,
and contracts for such publication were required to be made
by, and let to, some such qualified newspaper or newspa-
pers, and no other party or person.

Ch. 98, Laws of 1897, was published and went into effect
March 27, 1897; and the common council of *Milwaukee* was
thereby "authorized by resolution, duly adopted by a major-
ity of all the members elect of said body, to suspend or dis-
continue the publication of the proceedings of the common
council . . . for such period as they may deem proper.
. . . All acts or parts of acts, including the provisions of
any city charter which are inconsistent with the provisions
of this act, are hereby repealed." Nine days after that
amendment of the charter went into effect, the common
council of the city duly adopted the following resolutions:
"Resolved, further, that the publication of the proceedings
of this common council in a newspaper or newspapers shall
be suspended or discontinued during the ensuing year. Re-
solved, further, that the city clerk be, and is hereby, au-
thorized and directed to advertise for separate proposals to
print, respectively, 500, 750, or 1,000 each of the *proceedings*
of the common council (bound in pamphlet form) for the
next ensuing year." The authority thus given by the amend-
ment was exercised by the adoption of this first resolution,
thus suspending and discontinuing for the then ensuing year
the publication of the proceedings of the common council in
a newspaper or newspapers; and, as indicated, such publica-

tion of such *proceedings* was the only publication thereof which the charter previously required to be made by and let to such qualified newspaper or newspapers. In other words, after such exercise of such authority, suspending and discontinuing the publication of such proceedings of the common council in a newspaper or newspapers, there was no provision of the charter, nor any statute, requiring that the proposals for the printing of the proceedings of the common council in pamphlet form, as indicated in the second resolution quoted, should be confined to such qualified newspapers. As long as the publication of such proceedings of the common council was required to be made in newspapers, there was good reason for requiring the same to be made in newspapers having the requisite qualifications; but, when such publication in newspapers was wholly suspended and discontinued, then such reason terminated, and the city was thereby authorized to accept proposals and bids and award contracts for printing the proceedings of the common council in pamphlet form from others as well as such qualified newspapers.

The ground upon which the relator claims the right to the *mandamus* is based upon the theory that the city was precluded by the charter from accepting any proposals or bids or entering into any contract for printing the proceedings of the common council in pamphlet form, with any party or person, other than such qualified newspaper or newspapers. As we construe the charter, as amended, there is no solid ground for such contention. The printing of such proceedings in pamphlet form may fairly be regarded as "incidental printing," and hence the letting of the contract therefor is governed by secs. 16, 17, ch. 5 of the charter. Such being the construction of the charter provisions in question, the relator is not entitled to a *mandamus* merely because the clerk advertised for proposals, as required by the resolution last quoted, and the relator and others submitted such proposals to the clerk and common council April 20, 1897, and

the common council, at its meeting on that day, considered such bids, and referred the same to its committee on printing, together with the city attorney, for further consideration, and at its regular meeting, April 26, 1897, the printing committee and the city attorney reported back said proposals, with a recommendation that the several bids therein named for printing the proceedings of the common council in pamphlet form for the then ensuing year be rejected,— five of them, including that of the relator, as being too high, and one as being informal; and the further fact that the common council thereupon laid the matter of the printing of such proceedings over until its next regular meeting, to be held May 10, 1897, prior to which time the city was enjoined and restrained, in a suit therefor brought by the relator, from considering any bids for printing such proceedings, or letting the contract therefor to any person or party, except those submitted by such qualified newspaper printed in the English language.

The charter makes it the duty of the clerk to attend all meetings of the common council, and to keep a full record of their proceedings. Charter, subch. III, sec. 4. It also requires the sessions of the common council to be open and public, and that their proceedings shall be recorded. Subch. IV, sec. 2. It may be questionable whether the city is absolutely required to publish such proceedings of the common council. But in no view of the case, as we construe the charter, was the relator entitled to a *mandamus*.

*By the Court.*— The order and judgment of the circuit court are reversed, and the cause is remanded with direction to dismiss the relation.